UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHBUB RAHMAN (ISN #1052), Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba, *and* | ) ) ) |
| MOHAMMAD RAHMAN, As Next Friend of Mahbub Rahman, *and* | ) ) ) |
| SAMI AL HAJJ, As Next Friend of Mahbub Rahman, | ) ) ) |
| *Petitioners/Plaintiffs,* | ) ) |
| v. | ) ) ) |
| GEORGE W. BUSH, President of the United States The White House 1600 Pennsylvania Ave., N.W. Washington, D.C. 20500, | ) ) ) ) ) ) |
| ROBERT M. GATES, Secretary of Defense of the United States of America, Department of Defense 1000 Defense Pentagon Washington, D.C. 20301-1000, | ) ) ) ) ) ) ) ) |
| REAR ADMIRAL MARK H. BUZBY, Commander, Joint Task Force - GTMO JTF-GTMO APO AE 09360, and | ) ) ) ) ) |
| ARMY COL. BRUCE VARGO, Commander, Joint Detention Operations Group, JTF - GTMO JTF-GTMO APO AE 09360, | ) ) ) ) ) ) |
| *Respondents/Defendants.* | ) ) |

PETITION FOR WRIT OF HABEAS CORPUS

AND

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Petitioner Mahbub Rahman ("Rahman" or "petitioner"), a citizen of Afghanistan, acting on his own behalf and through his Next Friends, petitioners Mohammad Rahman and Sami Al Hajj, seeks the Great Writ of Habeas Corpus to challenge his unlawful detention at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo").

## PRELIMINARY STATEMENT

1.      Petitioner Mahbub Rahman[1] is, upon information and belief, approximately 18-21 years of age. Petitioner is a civilian who has never fought with al Qaeda or the Taliban or any military forces against the United States or coalition forces. Nevertheless, petitioner was ultimately taken into custody by the United States Government and transferred to Guantánamo Bay, Cuba, where he has been imprisoned, virtually *incommunicado,* since approximately 2003.

2.      Petitioner Rahman has been held for over five years without explanation in a prison far from his home where he does not know the language or customs of his captors; where he is denied the freedom to communicate with his family, his friends, and even other detainees; where he has been denied legal counsel; where every aspect of life is regulated by his captors; and where, upon information and belief, he is subject to cruel, inhumane, and degrading treatment, and physical and psychological interrogation techniques specifically designed to isolate him from the world and render him dependent on his captors.

3.      Petitioner is not an "enemy combatant," and is innocent of the accusations against him. He has been detained without lawful basis, without charge, and without any fair process by which he might challenge his detention. He is being detained and imprisoned under color of law and under the authority of the United States Government, in violation of the Constitution, laws and treaties of the United States as well as in contravention of customary international law.

---

[1] Unless otherwise indicated, all references to "petitioner" throughout this petition shall refer to petitioner Mahbub Rahman.

4.     During his imprisonment, petitioner was brought before a Combatant Status Review Tribunal ("CSRT") which was established to determine whether he is an "enemy combatant" pursuant to the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005) (DTA).  Under the CSRT rules and procedures, petitioner was denied counsel; denied the right to see or review the evidence against him; denied the right to confront, or even know the identity of, his accusers; denied the right to know how the military collected evidence; and denied an impartial tribunal because the CSRT was required to presume that evidence against him (which he has not seen) was genuine and accurate.  These rules and procedures in practice and effect virtually compelled the CSRT conclusion that petitioner was an "enemy combatant."

5.     Petitioner previously filed his Petition for Release and Other Relief Under Detainee Treatment Act of 2005 with the United States Court of Appeals for the District of Columbia Circuit (Case # 08-1054) challenging the finding that he was an enemy combatant, the laws and procedures of the DTA, and the constitutionality of the suspension of petitioner's rights to habeas corpus relief.

6.     Because of the many deficiencies in the process provided by the DTA and the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006) (MCA), the United States Supreme Court has recently held that MCA §7, which purportedly stripped this Court of jurisdiction to hear habeas corpus challenges to Guantánamo detainees' detentions, violates the Suspension Clause of the United States Constitution, U.S. Const., art. I, § 9, cl. 2, which guarantees petitioner the right to be charged criminally or released.  *Boumedienne v. Gates*,___US___, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008).

7.    Accordingly, petitioner seeks the Great Writ of Habeas Corpus.  He is entitled to habeas corpus under the Constitution and laws of the United States, because he is imprisoned by respondents without lawful basis, without charge and without any fair process by which he might challenge his detention in violation of United States and international law, including the Geneva Conventions.

8.    Petitioner's counsel have not yet visited their client.  Accordingly, the primary source of information to which counsel have access concerning petitioner's detention is the non-classified documents which counsel have obtained from the website of the United States Department of Defense.

9.    Counsel requests that an order be granted immediately to permit counsel to obtain any reasonably available information in the possession of the United States Government that bears on the issue of whether he should have been or should continue to be designated as an enemy combatant.

10.    Because their review has been limited to date, counsel allege all factual allegations concerning petitioner's detention upon information and belief pursuant to Rule 11(b) of the Federal Rules of Civil Procedure; and expressly reserve the right to amend and supplement this petition upon their review of available government information, interviews with their client, and any additional investigation.

## JURISDICTION AND VENUE

11.    Petitioner brings this action under 28 U.S.C. § 2241(a), (c)(1) and (c)(3), and § 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because he seeks declaratory relief, petitioner also relies upon Fed. R. Civ. P. 57.

12.    This Court is empowered under 28 USC § 2241 and the United States Constitution to grant this Writ of Habeas Corpus and to consider this petition under 28 USC § 2242; to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

13.    Venue is appropriate in this Court. *Boumedienne v. Gates*,___US___, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008).

## PARTIES

14.    As alleged above, petitioner Rahman is a citizen of Afghanistan who is presently being unlawfully detained in respondents' custody and control at Guantánamo.  Respondents refer to Rahman by his Internment Serial Number ("ISN"), #1052.  Upon information and belief, petitioner desires undersigned counsel to file this petition on his behalf.

15.    Petitioner Next Friend Mohammad Rahman is petitioner's brother who is familiar with petitioner, and reasonably believes that petitioner would want him to act in his interest and on his behalf.  Accordingly, because petitioner has been denied access to legal counsel and the courts of the United States, his brother is acting as petitioner's Next Friend and, in that capacity, is authorized to file this petition on behalf of petitioner Rahman. *See* Exh. A.[2]

16.    Petitioner Next Friend Sami Al Hajj, a citizen of Qatar, was a detainee imprisoned at Guantánamo, who was familiar with petitioner during their incarceration in Guantánamo. Upon information and belief, Al Hajj has been released from confinement.  Nevertheless, prior to

---

[2] Exhibit A is an Authorization executed by Mohammad Rahman authorizing attorneys on the staff of the Center for Constitutional Rights, as well as "any person assigned by these lawyers"

his release, Al Hajj met with his counsel and confirmed petitioner Rahman's direct request for representation, as well as Al Hajj's understanding of, and desire to serve as next friend; and on December 13, 2006, Al Hajj executed a written next-friend authorization for petitioner. Accordingly, because Rahman has been denied access to legal counsel and the courts of the United States, Al Hajj is also acting as petitioner's Next Friend and, in that capacity, is authorized to file this petition on behalf of petitioner Rahman. *See* Exh. B.

17.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Rahman is being detained pursuant to Respondent Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for petitioner Rahman's unlawful detention and is sued in his official capacity.

18.    Respondent Robert M. Gates is the Secretary of the United States Department of Defense. Pursuant to the respondent Bush's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, respondent Gates has been charged with maintaining the custody and control of petitioner Rahman. He is sued in his official capacity.

19.    Respondent Rear Admiral Mark H. Buzby is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for petitioner Rahman and is sued in his official capacity.

---

to act on his and petitioner's behalf. The undersigned counsel have been assigned to the representation of petitioner Rahman by the Center.

20.     Respondent Army Colonel Bruce Vargo is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where petitioner Rahman is presently held.  He is the immediate custodian responsible for petitioner Rahman's detention and is sued in his official capacity.

21.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to respondents' actions in this Petition include activities performed by respondents' agents or employees, other government agents or employees or contractor employees.

## STATEMENT OF FACTS

### Background

22.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized respondent Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

23.     On November 13, 2001, respondent Bush issued an Executive Order authorizing former Secretary of Defense Rumsfeld to detain indefinitely anyone respondent Bush has "reason to believe":

    i.     is or was a member of the organization known as al Qaeda;

    ii.    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or

        have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

iii.      has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). Respondent Bush is required to make this determination in writing. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

     24.    The Executive Order purports to vest respondent Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes the confinement of detainees indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court of law. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention based on nothing more than respondent Bush's written determination that an individual is subject to its terms.

     25.    On June 28, 2004, the Supreme Court determined that detainees had certain due process rights, including the right to challenge the legality of their detentions. *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004); *Rasul v. Bush*, 542 U.S. 466 (2004).

     26.    Following and as a result of the *Hamdi* and *Rasul* decisions, respondents created the CSRTs, and provided standards and procedures for the conduct of CSRTs to be used in determining whether a detainee is an "enemy combatant," defined as:

an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

27.    The CSRT procedures fail to meet the most basic and fundamental level of due process and fairness required for any meaningful review of the basis for a detainee's continued imprisonment.

### Guantánamo Bay Naval Station

28.    In 1903, the United States entered into a long-standing lease with the Cuban government that extended complete jurisdiction and control of Guantánamo. The United States military enforces United States laws, rules and regulations on Guantánamo, and controls passage in and out of Guantánamo.

29.    By virtue of the complete jurisdiction and control exercised by the United States Government over Guantánamo and enforcement by the United States military of United States law on all activities on Guantánamo, including control over entry to and egress from Guantánamo, persons on Guantánamo, including the detainees, are subject to the protections and rights guaranteed by the U.S. Constitution.

30.    On about January 11, 2002, the United States military began transporting captured prisoners to Guantánamo. Once there, respondents denied the detainees prisoner of war status under the Geneva Conventions and instead classified them as "enemy combatants." Upon information and belief, sometime in 2003, respondents transferred petitioner Rahman to Guantánamo, where he has been held in the custody and control of respondents ever since.

31.    At Guantánamo, detainees are completely cut off from the world. Respondents have barred the release of information about the detainees – in fact, respondents even refused to

disclose the detainees' names until April, 2006, when so ordered by a federal court in response to legal action.

32.     Petitioner and other detainees have been denied access to their families, their friends, counsel, and other organizations. Detainees are not allowed personal visits. They have no access to telephones. They are not allowed newspapers, magazines or other reading material, except for the Koran and a limited range of books pre-approved by the military.

33.     Based on other detainees' experiences and published reports, petitioner likely has been interrogated under extreme conditions by agents from the United States Department of Defense, the Department of Justice, the Central Intelligence Agency, and private contractors. For example, some detainees have been subjected to up to 20 hours of interrogation a day over 30 consecutive days. *Interrogation Log of Detainee 063*, Time Online, Mar. 3, 2006, http://www.time.com/time/2006/log/log.pdf.

34.     Interrogations at Guantánamo reportedly incorporate extreme physical and psychological stress intended to create pervasive pain, fear, helplessness and desolation in order to crush a detainee's self-confidence and to instill a feeling of complete reliance upon American military personnel. For example, in a classified interrogation log published by *Time Magazine*, an unnamed detainee was persistently humiliated by being forced into close physical proximity with female interrogators and to participate in memory games involving scantily clad women. He also consistently was deprived of control of basic bodily functions, being doused with water whenever he refused to drink and given intravenous fluids and then denied the opportunity to use the toilet. At times, he was made to act like a dog, obeying commands to "sit" or "stay."

35.     On information and belief, respondents exercise the threat of rendition to exert further power and dominion over the detainees. On information and belief, respondents have

transferred detainees to countries that practice torture in order to compel responses to interrogations.  *See* Jane Mayer, *Outsourcing Torture:  The Secret History of America's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.  The United States Government's practice of rendition has been well documented by various major American and international news organizations and has been acknowledged by, among others, former Secretary of State Colin Powell.  *See Powell Raps Europe on CIA Flights*, BBC News, *available at* http://news.bbc.co.uk/2/hi/americas/4538788.stm.

36.    On information and belief, petitioner is at risk, and in constant fear, of being rendered, expelled or transferred without lawful procedures to a country that engages in torture during interrogation or incarceration.  On information and belief, petitioner has a legitimate fear of imminent harm if rendered to any other country due to risk of incarceration, torture and persecution.

37.    These interrogation techniques also are intended to destroy a detainee's capacity to trust other persons.  For example, on information and belief, United States Government agents in civilian clothes have falsely represented themselves as private civilian lawyers retained to represent the detainees.  Such deception is not only intended to extract information from the detainees, but also to render detainees suspicious, incapable of trust, docile and completely acquiescent to their captors.  *See* Sam Hanamel, *Lawyers Describe Guantánamo Detainees as Emaciated, Abused*, Associated Press, Jan. 19, 2005.

38.    On information and belief, petitioner has been subjected to the above coercive and unlawful interrogation techniques, violating his Constitutional, statutory and international rights to dignity and freedom from torture and from cruel, inhumane and degrading treatment and

punishment. *See, e.g.,* U.N. Econ. & Soc. Council, Comm. On Human Rights, *Report: Situation of Detainees at Guantánamo Bay,* ¶ 52, U.N. Doc. E/CN.4/2006/120 (Feb. 15, 2006).

**Facts Concerning Petitioner's Detention**

39.     Respondents have not provided the facts concerning petitioner's CSRT proceedings to undersigned counsel. The only information available concerning the purported justification for petitioner's imprisonment is from unclassified excerpts of petitioner's CSRT and Administrative Review Board ("ARB")[3] proceedings, which were produced publicly by respondents in response to legal action.

40.     The unclassified excerpts of petitioner's CSRT proceedings, which are vague and conclusory in form, charge that petitioner "is associated with al Qaida and the Taliban in that he agreed to spy on the Americans;" and that petitioner "participated in military operations against the United States and its coalition partners."

41.     The above  allegations are not true, and are not supported by reliable credible evidence, and are insufficient to support an "enemy combatant" designation.

42.     At the time of his seizure and detention, petitioner was very young.

43.     Petitioner was sleeping in a mosque when captured by Afghan forces, waiting for a friend. He was not involved in any actions against coalition forces.

44.     A witness corroborated petitioner's statement. Two other witnesses, whose presence and testimony had been requested by petitioner, were deemed "unavailable" by the tribunal.

---

[3] The ARBs are supposed to determine whether prisoners designated as enemy combatants should be released from Guantánamo on the grounds that they pose no threat to the United States, nor have any intelligence value.

45.     Petitioner stated during the CSRT that he supported the Afghan Government and the American and coalition forces in their efforts to improve conditions in Afghanistan and secure the safety of the people; and that he wished to be released so that he could return to his homeland to attend school.

46.     Petitioner was not a member of the Taliban Government's armed forces or al Qaeda. Prior to his detention, he did not commit any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to al Qaeda.

47.     Petitioner was not associated with al Qaida or the Taliban in any manner, and did not spy against the Americans. Because of his youth, petitioner was unknowledgeable about al Qaeda and Osama bin Laden, or any concerted efforts against the American and coalition forces.

48.     Petitioner never received any military training designed to support any efforts on the part of al Qaeda and the Taliban against coalition forces, and never participated in military operations against the United States or its coalition partners.

49.     Petitioner Rahman is not, nor has he ever been an "enemy combatant" *Hamdi v. Rumsfeld*, 524 U.S. __, 124 S. Ct. 2633, 2639 (plurality) (2004).

50.     Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the United States Constitution, the laws and treaties of the United States, or customary international law.

51.     Petitioner Rahman seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for respondents'

determination that he is an "enemy combatant" as defined by the United States Supreme Court in *Hamdi,* or under the DTA and CSRT procedures.

**CLAIMS FOR RELIEF**

***FIRST CLAIM FOR RELIEF***
**Common Law Due Process and Due Process Clause**
**of the Fifth Amendment to the Constitution of the United States -**
**Unlawful Deprivation Of Liberty**

52.    Petitioner incorporates by reference the foregoing paragraphs as if set forth fully herein.

53.    By their actions set forth above, respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the U.S. Constitution. The prolonged, indefinite, and arbitrary detention of petitioner, without due process of law, denies petitioner the rights accorded to persons seized and detained by the United States Military in times of armed conflict, as established by the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multinational treaties and other international instruments, international and domestic judicial decisions, and other authorities and incorporated in the laws of the United States.

54.    Petitioner's prolonged, indefinite, and arbitrary detention is based on the CSRT's determination that petitioner is an "enemy combatant." The standards and procedures governing the CSRT, as detailed above, did not meet minimal standards of due process and fundamental fairness as required by the Constitution, laws of the United States, and international law. Specifically, the standards and procedures (i) failed to provide petitioner with adequate notice of the hearing; (ii) failed to provide petitioner with sufficient time or resources to properly prepare

14

for the hearing; (iii) denied petitioner access to counsel; (iv) failed to provide petitioner with notice of the evidence against him, much less the opportunity to challenge or confront such evidence; (v) effectively forced the petitioner to testify against himself; (vi) required a *de facto* presumption of guilt; and (vii) prevented exculpatory evidence already in respondents' possession from being introduced. As a result, petitioner was denied the right to be heard.

55.    To the extent that Petitioner's detention purports to be authorized by the Executive Order, the Executive Order violates the Fifth Amendment on its face, and as applied to petitioner, in contravention of 28 U.S.C. § 2241 (c)(3).

56.    Respondents' detention of petitioner under color of law constitutes an unlawful deprivation of liberty in violation of common law Due Process and the Due Process Clause of the Fifth Amendment to the United States Constitution.

57.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### SECOND CLAIM FOR RELIEF
**Due Process Clause of the Fifth Amendment to the Constitution of the United States -
Unlawful Conditions Of Confinement**

58.    Petitioner incorporates by reference the foregoing paragraphs as if set forth fully herein.

59.    By their actions described above, respondents, acting under the color of law, have violated and continue to deprive petitioner of the right to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

60.    These conditions of confinement are independent violations of petitioner's rights under the Constitution and laws (including duly ratified treaties and customary international law) of the United States.

15

61.    These conditions have had the intention or effect of denying petitioner any meaningful opportunity to participate in the CSRT – a purported "non-adversarial hearing." As a result, the CSRT and its governing standards and procedures are facially inconsistent with the Constitution and laws of the United States (including duly ratified treaties and customary international law incorporated into the laws of the United States).

62.    By the actions described above, respondents, acting under color of law, have deprived and continue to deprive petitioner of the right to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

63.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### THIRD CLAIM FOR RELIEF
### Geneva Conventions - Arbitrary Denial Of Due Process

64.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

65.    By their actions described above, respondents, acting under color of law, have denied and continue to deny petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

66.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241(c)(3).

67.    Respondents are legally responsible for said conduct, as they determined the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

68.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### FOURTH CLAIM FOR RELIEF
### International Humanitarian and Human Rights Law
### - Arbitrary Denial of Due Process

69.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

70.    By their actions described above, respondents, acting under color of law, have denied and continue to deny petitioner the process due to persons seized and detained by the United States military in times of armed conflict as established by customary international humanitarian and human rights law, as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

71.    Because respondents have detained and continue to detain petitioner "under or by color of the authority of the United States," and "in violation of the Constitution or laws or treaties of the United States," they have contravened 28 U.S.C. § 2241(c)(1) and (3).

72.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### FIFTH CLAIM FOR RELIEF
### Alien Tort Statute - Torture

73.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

74.    Upon information and belief, by their actions described above, the respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon petitioner in order to obtain coerced information or confessions from him, punish or intimidate petitioner or for other purposes.  Among other abuses, upon information and belief, petitioner has been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or threatened with solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

75.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

76.    Respondents are legally responsible for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against petitioner.

77.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### SIXTH CLAIM FOR RELIEF
### Alien Tort Statute - War Crimes

78.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

79.    As described above, respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the torture and other inhumane treatment of petitioner constituting war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in violation of the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

80.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### SEVENTH CLAIM FOR RELIEF
### Alien Tort Statute –
### Cruel, Inhuman or Degrading Treatment

81.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

82.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

83.    Respondents are legally responsible for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of petitioner.

84.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

## EIGHTH CLAIM FOR RELIEF
### Alien Tort Statute -
### Arbitrary Arrest and Prolonged Arbitrary Detention

85.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

86.    Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in violation of customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

87.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

## NINTH CLAIM FOR RELIEF
### Alien Tort Statute - Enforced Disappearance

88.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

89.    By their actions described above, the respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated

20

customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

90.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### TENTH CLAIM FOR RELIEF
**Article II of the United States Constitution -
Unlawful Detention**

91.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

92.    Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or enemy combatant.  The respondents lack the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield."  *Hamdi v. Rumsfeld*, 524 U.S. __, 124 S. Ct. 2633, 2642 n.1 (2004).

93.    By the actions described above, respondent Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize petitioner and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo.  All of the respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of petitioner.

94.    Accordingly, the military seizure and detention of petitioner by the respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution.

95.     To the extent that the Executive asserts that petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to petitioner.

96.     To the extent that respondents assert that their authority to detain petitioner derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, respondents lack that authority as a matter of fact and law.

97.     As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### ELEVENTH CLAIM FOR RELIEF
#### Violation of the APA - Arbitrary and Capricious
#### Unlawful Detention

98.     Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

99.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

100.    By arbitrarily and capriciously detaining petitioner in military custody for over five years in the manner described above, respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

101.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### TWELFTH CLAIM FOR RELIEF
### Violation of the APA - Arbitrary and Capricious
### Denial of Due Process

102.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

103.    By the actions described above, respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

104.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### THIRTEENTH CLAIM FOR RELIEF
### Violation of the APA - Torture and Cruel, Inhuman
### or Degrading Treatment

105.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

106.    By their actions described above, respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring unlawfully to subject petitioner to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedure Act, 5 U.S.C. § 706(2).

107.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### *FOURTEENTH CLAIM FOR RELIEF*
**Violation of the Right to Counsel and to Access to the Courts**

108.   Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

109.   Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon petitioner's right to consult with counsel by conditioning counsel's access to petitioner on unreasonable terms, including classification/declassification procedures, all in violation of petitioner's attorney-client privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

110.   As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### *FIFTEENTH CLAIM FOR RELIEF*
**Due Process Clause - Rendition**

111.   Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

112.   Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

113.   As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### SIXTEENTH CLAIM FOR RELIEF
**Convention Against Torture and
Convention Relating to the Status of Refugees - Rendition**

114.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

115.    Upon information and belief, petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of petitioner's rights under the Covention Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

116.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

### SEVENTEENTH CLAIM FOR RELIEF
**Alien Tort Statute- Rendition**

117.    Petitioners incorporate by reference the foregoing paragraphs as if set forth fully herein.

118.    Upon information and belief, petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute, 28 U.S.C. § 1350.

119.    As a result of respondents' unlawful conduct, petitioner is entitled to habeas, declaratory, and injunctive relief.

## MOTION FOR PRELIMINARY INJUNCTION AGAINST
## TRANSFER OF PETITIONER

120.    Petitioner respectfully requests immediate entry of a temporary restraining order and preliminary injunctive relief enjoining respondents and their agents from transferring, moving, or otherwise taking any action, without petitioner's consent, that would remove him from the jurisdiction of this Court pending a final determination with respect to this petition, other than an unconditional release of petitioner in the United States.

121.    On information and belief, respondents have established prisons throughout the world and have subjected foreign nationals to secret detention.  On information and belief, respondents established these foreign prisons, among other reasons, specifically to avoid jurisdiction of this and other federal courts to review the fact and conditions of such detentions.

122.    On information and belief, respondents are considering transfer to countries that will ensure the continued detention of detainees, and countries that routinely practice torture. *See* U.S. Dept. of State, Country Reports on Human Rights Practices:  Afghanistan, Mar. 8, 2006, *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61704.htm.

123.    This Court has inherent power and jurisdiction under 28 U.S.C. § 1651 in aid of its own jurisdiction to address the potential rendition or transfer of petitioner.  Moreover, the rendering of petitioner to another country for interrogation or torture would also violate § 1003 of the Detainee Treatment Act of 2005, the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment, the International Covenant on Civil and Political Rights, Dec. 19, 1966, S. Exec. No. Doc. E, 95-2, 999 U.N.T.S. 171, and the Third and Fourth Geneva Conventions, Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135; Geneva Convention Relative to the Protection of Civilian

Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287. This Court also has jurisdiction to address the potential rendition of petitioner pursuant to 28 U.S.C. § 1350.

## PRAYER FOR RELIEF

WHEREFORE, petitioner respectfully requests that the Court grant the following preliminary and final relief.

### A.    Preliminary Relief

Petitioner respectfully requests entry of orders, pending final resolution and determination of each and every claim in this Petition, providing the following preliminary relief:

(a)    Designating Mohammad Rahman and Sami Al Hajj as Next Friends of Mahbub Rahman;

(b)    Ordering that petitioner Rahman cannot be transferred to any other country without his specific written agreement or the written agreement of his counsel while this action is pending;

(c)    Entering an order immediately compelling respondents to provide petitioner's security-cleared counsel with access to reasonably available information in the possession of the United States Government that bears on the issue of whether petitioner should have been or continues to be designated as an "enemy combatant," whether or not such information heretofore has been compiled;

(d)    Entering a protective order permitting petitioner immediate access to his counsel in private and unmonitored attorney-client conversations and immediate access to the legal mail system established for Guantánamo prisoners;

(e)    Ordering that petitioner be allowed to conduct discovery, including but not limited to, requests for production of all documents related to the petitioner's CSRT, his detention and interrogation;

(f)    Ordering respondents to cease all interrogations of petitioner Rahman during the pendency of this action;

(g)    Ordering respondents to cease all acts of cruel, unusual, inhuman, and degrading treatment of petitioner Rahman;

(h)    Granting leave to amend this petition with additional records and documents relating to petitioner's detention at a later date;

(i)    Scheduling a hearing on the merits of this petition; and

(j)    Granting such other and further preliminary relief as the Court may deem just and proper to protect petitioner's rights under the Constitution and laws of the United States, including the Geneva Conventions and customary international law.

**B.    Prayer For Final Relief**

Petitioner respectfully requests entry of orders, upon final resolution and determination of each and every claim in this petition, providing the following final relief:

(a)    Ordering and declaring that the prolonged, indefinite, and restrictive detention of petitioner Rahman without due process is arbitrary and unlawful in violation of common law principles of due process, the Constitution and laws of the United States, the regulations of the United States military, the treaties of the United States, including the Geneva Conventions and customary international law;

(b)    Ordering and declaring that the standards and procedures applied by respondents for the conduct of the CSRTs are inconsistent with the Constitution and laws of the United States;

(c)    Ordering and declaring that petitioner is not properly classified as an "enemy combatant";

(d)    Directing the immediate release of petitioner; and

(e)    Granting such other and further relief as the Court may deem just and proper to protect petitioner's rights under the Constitution and laws of the United States, and the Geneva Conventions and customary international law.

This the 15th day of July, 2008.

Robert M. Elliot (D.C. Cir. Bar # 51320)
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
Tel: (336) 724-2828
Fax: (336) 714-4499

Stewart W. Fisher (D.C. Cir. Bar # 51544)
Glenn, Mills & Fisher, P.A.
400 West Main Street, Suite 709
Durham, NC 27702
Tel: (919) 683-2135
Fax: (919) 688-9339


C. Frank Goldsmith, Jr. (D.C. Cir. Bar # 51666)
Goldsmith Goldsmith & Dews, P.A.
P. O. Box 1107
Marion, NC 28752-1107
Tel: (828) 652-3000
Fax: (828) 652-9196

Attorneys for Petitioner

Shayana D. Kadidal
J. Wells Dixon
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway 7th Floor
New York NY 10012
Tel: (212) 614-6438

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an attorney at law licensed to practice in the State of North Carolina, is attorney for the plaintiff and is a person of such age and discretion as to be competent to serve process.

That on July 15, 2008 he served a copy of the foregoing document by placing said copy in a postpaid envelope addressed to the persons hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and its contents in the United States Mail at Winston-Salem, North Carolina.

Sarang V. Damle
Attorney, Appellate Staff Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW, Room 7217
Washington DC 20530-0001

Robert M. Loeb, Esq.
U.S. Department of Justice
Civil Division, Room 7268
950 Pennsylvania Ave., N.W.
Washington, DC  20530-0001

Robert M. Elliot (D.C. Cir. Bar # 51320)

# EXHIBIT A

**Authorization**

Please return to:
Center for Constitutional Rights
ATTN: Gita Gutierrez,
666 Broadway, 7th Floor
New York, NY 10012

Date: 6.103.08

My name is Mohammad Rahmat. I am acting as a next friend for Mahboob Ramazan, a citizen of Afghanistan, who is being held at Guantánamo Bay.

I know that he would want me to act on his behalf to secure legal representation for him. I hereby authorize Gitanjali Gutierrez, Shayana Kadidal, Wells Dixon, and Pardiss Kebriaei of the Center for Constitutional Rights and any person assigned by these lawyers to act on my behalf and on this detainee's behalf, to secure any documents and information concerning this detainee that is necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the Courts of the United States, and in any other legal forum available.

Signature: _____

Print Name: _____
M. Rahma

# EXHIBIT B

JAN-15-2007  16:15                                                P.14

# FOUO

**GUANTANAMO BAY**

I, SAMI AL HAJI, hereby state that I am familiar with the American legal concept of "next friend" and I wish to act as next friend for the following prisoners who are being held here in Guantanamo Bay. The Department of Defense's Enemy Combatant Notice (ECN) that was distributed to detainees expressly stated that a detainee could have a "family member or friend" file a habeas petition on the detainee's behalf. Because these are men who are not familiar with the U.S. legal system and customs, and because it is so difficult for these prisoners to have a family member perform this task, I am acting as their friend. Each one is from Afghanistan, and has been held at this prison for four to five years without access to legal counsel:

| | |
|---|---|
| NOORI, MULLAH NORULLAH | GUL, KHI ALI |
| FAZL, MULLAH MOHAMMAD | GHANI, ABDUL |
| RASOUL, ABDULLAH GULAM | DIN, JUMA |
| ALIZA, ABDUL RAUF | RAZZAK, ABDUL |
| AL ANSARI, FARIS MUSLIM | GHANI, ABDUL 2 |
| TORJAN, SHAIBJAN | LNU, SHARIFULLAH |
| DAOUD, MOHAMMAN | JAN, SAID AMIR |
| GUL, DAWD | NASIR, ALLAH |
| SHARIF, MOHAMMED | HAFIZULLAH, FNU |
| KHAIRKHWA, KHIRULLAH SAID WALI | BARIDAD |
| OBAIDULLAH | YAR, KUSHKY |
| GUL, AWAL | KANDAHARI, KAKO |
| HASHIM, MOHAMMED | AHMED, SHABIR |
| NASRULLAH, FNU | SHAH, NAHIR |
| KHAN, SHAWALI | HAFIZ, ABDUL |
| JAWAD, MOHAMED | RAHMAN, MAHBUB |
| RAZZAQ, ABDUL | YAKUBI |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 15 day of December, 2006.

_____

Sami al Hajj

# FOUO

**CIVIL COVER SHEET**

08-1223
JR

JS-44
Rev.1/05 DC)

**I (a) PLAINTIFFS**

Mahbub Rahman (ISN# 1052), et al.

**DEFENDANTS**

George W Bush, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert M. Elliot
Elliot Pishko Morgan, PA
426 Old Salem Road, Winston-Salem, NC 27101
336-724-2828

Case: 1:08-cv-1223
Assigned To : Robertson, James
Assign. Date : 7/16/2008
Description:Habeas Corpus/2255

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ◉ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency
Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| **G.** *Habeas Corpus/* *2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| [X] 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 2241, et seq (Guantanamo defense petition)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ [_____] <br> JURY DEMAND: | Check YES only if demanded in complaint <br> YES ☐   NO [X] |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐   NO [X]    If yes, please complete related case form.

DATE  07/15/2008     SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   **I.**     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   **VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.